IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs at Knoxville September 15, 2015

**RYAN ROBERT HAASE v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Marshall County**
**No. 2011-CR-98-PCR     Lee Russell, Judge**

---

**No. M2015-00251-CCA-R3-PC – Filed May 9, 2016**

---

The Petitioner, Ryan Robert Haase, filed a petition for post-conviction relief in the Marshall County Circuit Court, alleging that his counsel were ineffective for failing to advise him correctly on his range classification and that as a result, he chose to reject a plea agreement and proceed to trial. The post-conviction court denied the petition, and the Petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA McGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Melissa L. Thomas, Fayetteville, Tennessee, for the Appellant, Ryan Robert Haase.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Robert Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The Petitioner was convicted by a Marshall County Circuit Court Jury of attempted first degree murder, aggravated assault, and domestic assault. State v. Ryan Robert Haase, No. M2012-02244-CCA-R3-CD, 2013 WL 6732908, at *1 (Tenn. Crim. App. Dec. 20, 2013). The convictions stemmed from the Petitioner's throwing boiling oil on his twenty-four-year-old girlfriend, with whom he lived. Id. At trial, the victim

testified that after the Petitioner hit her on March 19, 2011, March 22, 2011, and April 8, 2011, she told him to move out of her house by April 15, 2011. Id. The Petitioner repeatedly asked for permission to stay in the house, but the victim refused. Id. On the night of April 10, 2011, the victim and the Petitioner argued. Id. at *2. The victim went to bed around 10:00 p.m. and woke around 2:00 a.m. when the Petitioner came into her bedroom, threw her cellular telephone, and called her a derogatory name. Id. The Petitioner left the room, but the victim could not fall back asleep. Id. A few minutes later, the Petitioner returned and threw a pot of hot oil on the victim. Id. The victim's "pain was instant and '[e]xcruciating.'" Id. The victim ran from the bedroom in search of the landline telephone, and the Petitioner remained in the bedroom. Id. The victim's "skin was 'falling off' of her and blood was 'everywhere.'" Id. Unable to locate a telephone, the victim ran out of the house and sought help from a neighbor. Id. at *3. The neighbor called 911, and the victim was ultimately flown to Vanderbilt Hospital. Id. The victim spent 126 days in intensive care, underwent "thirteen surgeries and five 'procedures,'" and anticipated needing "'many'" other medical treatments. Id. The victim lost an ear and vision in one eye and, as of the time of trial, still had open wounds that bled and had to take pain medicine. Id. She had been unable to work since the offense. Id. at *1.

At the sentencing hearing, the trial court merged the aggravated assault and domestic assault convictions into the attempted murder conviction and sentenced the Petitioner as a Range II, multiple offender to forty years in the Tennessee Department of Correction with release eligibility after serving thirty-five percent of the sentence. Id.

Subsequently, the Petitioner filed a petition for post-conviction relief, alleging that his counsel were ineffective. In pertinent part,[1] the Petitioner contended that his counsel advised him that he was a Range I, standard offender, leading him to reject a plea offer from the State. However, at trial, the trial court determined that the Petitioner was a Range II, multiple offender and sentenced him to forty years in the Tennessee Department of Correction with release eligibility after service of thirty-five percent of the sentence.

At the post-conviction hearing, W.H., an assistant public defender, testified that he and another assistant public defender, M.C., were appointed to represent the Petitioner in the general sessions court. The assistant public defenders obtained discovery from the State, which included the State's notice of enhancement form listing three prior convictions from another state. One was "a home invasion second degree," which was equivalent to aggravated burglary in Tennessee. W.H. stated that the Petitioner was advised that the home invasion conviction "would count against [him] for any offense for

---

[1] The Petitioner raised numerous claims in his post-conviction petition, which have been abandoned on appeal. Accordingly, we will constrain our recitation to facts relating to the claim raised on appeal.

determining range." The second conviction was a "marijuana charge." The third conviction was

> less clear. It was listed as a controlled substance, less than 50 grams, but did not contain a schedule drug or anything like that. So what we told him was without more information, you are possibly a Range II offender for everything, but possibly also a Range I offender. So discussing with him, we asked if he would allow us to try to negotiate as a Range I offender unless the State said otherwise.

W.H. said that the Petitioner was advised that if the trial court determined that either of the drug convictions should be classified as a C, D, or E felony, the Petitioner would "definitely" be a Range II offender. W.H. asserted that the Petitioner seemed to understand that he could potentially be a Range II offender.

W.H. said that when the case was transferred to circuit court, counsel asked the Petitioner to allow them to negotiate with the State for an agreement as a Range I offender, and he agreed. On December 7, 2011, the State approached counsel with an offer of a twenty-year sentence with release eligibility after thirty percent of the sentence if the Petitioner would plead guilty to attempted first degree murder. Counsel discussed the offer with the Petitioner and explained the sentence he would be facing if he rejected the offer to plead as a Range I offender. W.H. recalled that the counsel "pretty much begged" the Petitioner to accept the State's offer because of their concerns that he would be convicted of attempted first degree murder and receive a longer sentence.

Although the Petitioner acknowledged to counsel that "he was in the wrong," he staunchly maintained that he did not attempt to murder the victim and committed only an aggravated assault. W.H. said that the Petitioner believed that the conviction offense was as important as the sentence. The Petitioner refused to plead guilty to any offense greater than attempted second degree murder or accept a sentence longer than twelve years. Accordingly, the Petitioner refused the State's plea offer. The prosecutor advised counsel that the only offer the State would make was a conviction of attempted first degree murder with a sentence of twenty years. The State rejected the counsel's counteroffer of attempted second degree murder with a sentence of twelve years.

W.H. said that following a "riot" at the Lincoln County Jail, the Petitioner's entire "cell block" was charged. The charges against the Petitioner were eventually dropped, but the public defender's office filed a motion to withdraw because it represented other clients in the cell block. Subsequently, the trial court appointed trial counsel. W.H. said that he could not recall whether he or another attorney from the public defender's office spoke with trial counsel when the Petitioner's file was given to trial counsel. However,

W.H. stated that he would have been available to discuss matters with trial counsel. W.H. said that the State's offer was a verbal offer and was never reduced to a formal written agreement. He did not specifically recall advising trial counsel of the plea offer but said that his practice was to make subsequent counsel aware of any plea offers. After being relieved as counsel, W.H. had no further communications with the Petitioner.

On cross-examination, W.H. clarified that he had received the enhancement notice a "fairly lengthy period of time" before the State made the plea offer. He spoke with the Petitioner about potential dispositions of the case almost every time they met, and they discussed "potential penalties . . . from the very beginning in general sessions court."

W.H. said that they explained to the Petitioner that the proof against him was strong, that the victim had serious injuries, and that "there would be a lot of emotion involved in" the trial. The Petitioner understood but wanted to proceed to trial.

On redirect examination, W.H. said that he advised the Petitioner that on "the aggravated assault, he was definitely a Range II." He told Petitioner that he could be a Range II offender and face a sentence of up to forty years for attempted first degree murder and up to twenty years for attempted second degree murder. He did not recall telling the Petitioner "that the next time [they] came to court, [they] could get a different offer or maybe take that offer." W.H. discussed with the Petitioner the possibility of negotiating for a fifteen-year sentence, but the Petitioner seemed adamant that he would not accept a sentence greater than twelve years and refused to plead guilty to attempted first degree murder.

M.C., an assistant public defender, testified that almost from the beginning of the case, the Petitioner questioned why he was charged with attempted first degree murder instead of aggravated assault. Counsel explained the charges and told the Petitioner about the sentences he could receive. M.C. recalled that the State made a plea offer that included a sentence of twenty years. The Petitioner rejected the offer, because he wanted a sentence of twelve years or less.

M.C. said that counsel received the enhancement notice "well before" the plea offer was made. He said:

> [T]he marijuana, we didn't think that would enhance him at all. The home invasion, to us, looked like an aggravated burglary in this State, so we believe that would enhance him. And there was question about the other one, because it was not completely clear about what the controlled substance was. So we weren't sure whether he was going to be a Range I or a Range II.

- 4 -

M.C. said that the Petitioner was informed that he was facing a sentence between fifteen and twenty-five years if he were sentenced as a Range I offender and that "he was looking much closer to the 25 mark." Additionally, counsel informed the Petitioner that he was facing a forty-year sentence if the trial court determined he was a Range II offender. M.C. said that they were surprised that the State offered twenty years. Counsel "begged" the Petitioner to accept the twenty-year sentence "because we felt like that was by far his best option." Counsel explained that the Petitioner unquestionably committed the offense and that the only question was the Petitioner's mental state at the time of the offense.

Trial counsel testified that after he was appointed, the Petitioner told him about a prior plea offer involving a sentence of twenty years. Trial counsel contacted M.C. and verified that the State had made a plea offer that included a sentence of twenty years. However, the offer was withdrawn before trial counsel began representing the Petitioner. Trial counsel recalled that the facts of the case "were just terrible" and that the prosecutor "really took that to heart." Trial counsel was certain that the Petitioner's only options were to go to trial or enter an "open plea."

Trial counsel said that because the State had withdrawn the offer, he focused on preparing for trial. One or two weeks prior to trial, trial counsel examined the enhancement notice to determine whether any of the prior convictions could be used to impeach the Petitioner if he testified at trial. At that point, trial counsel realized that the Petitioner was potentially a Range II offender. Trial counsel contacted the prosecutor and inquired about the twenty-year offer. The prosecutor responded that "there's no offer in the case right now."

Trial counsel said that the Petitioner needed to testify at trial "to explain why he did what he did, and that he wasn't trying to kill this woman." A couple of days prior to trial, trial counsel told the Petitioner's father that the Petitioner was a Range II offender and that the Petitioner had turned down a plea offer. Trial counsel testified that he told the Petitioner's father:

> I'm deciding not to tell your son that he's Range II right now, because I think he's in such a fragile state that it's going to screw him up testifying on the stand. If he's got to deal with him being maybe a Range II instead of Range I, that's – I think it's just going to hurt us as far as his ability to testify up here and do well.

The Petitioner's father responded that he thought trial counsel's idea was probably a good one. Trial counsel said that the Petitioner testified well at trial. After the Petitioner

testified and while the trial was still proceeding, trial counsel advised the Petitioner, "[B]rother, I think you may be Range II."

Trial counsel was not sure whether he was told by the Petitioner's previous attorneys that the Petitioner may be a Range II offender. He said at that point, the Petitioner's classification was not a major concern because the State was not willing to offer a settlement.

Trial counsel agreed that it was "a bad case," especially because the Petitioner confessed to the offense. Although the Petitioner maintained that he was guilty of only aggravated assault, trial counsel informed the Petitioner, "I can't do anything to get rid of this attempted first-degree murder, we got to go to trial on it." Trial counsel denied telling the Petitioner that he could "beat" the attempted first degree murder charge but that he may have said, "[W]e got a good shot at this." Trial counsel also noted, however, that the victim's injuries were "severe" and "horrible."

The Petitioner testified that he was convicted of attempted first degree murder and that he was sentenced as a Range II offender to forty years in confinement. The Petitioner denied that the assistant public defenders warned him that he was possibly a Range II offender. According to the Petitioner, the assistant public defenders told him that the State offered a plea with a sentence of twenty years as a Range I offender with release eligibility after service of thirty percent of the sentence. The attorneys asked what plea the Petitioner would be willing to accept, and the Petitioner responded, "[N]o more than 12 years at 30 percent, which would be a second-degree attempted murder." The Petitioner said that the attorneys told him that he was supposed to return to court in approximately one month and that they would try to get the State to agree to fifteen years at thirty percent.

The Petitioner said that he considered accepting the offer because he was told the State would not agree to reduce the charge. However, while the Petitioner was considering the offer, the assistant public defenders were replaced with trial counsel. The Petitioner said that he told trial counsel about the prior offer and was told that the State was no longer negotiating. The Petitioner acknowledged that he did not tell any of his attorneys that he would agree to accept a sentence of fifteen years and plead guilty to attempted first degree murder.

The Petitioner said that trial counsel did not tell him prior to trial that he was potentially a Range II offender. The Petitioner said that he probably would have accepted the plea agreement if he had been informed that he was potentially a Range II offender. The Petitioner said that he thought the maximum sentence he could receive was a twenty-five years with release eligibility after serving thirty percent.

On cross-examination, the Petitioner again stated that the assistant public defenders never told him that he could be sentenced as a Range II offender and that they never reviewed the notice of enhancement with him. The Petitioner acknowledged that when he learned that he could be sentenced as a Range II offender, he did not ask trial counsel to stop the trial so that he could plead guilty. The Petitioner further acknowledged that the assistant public defenders told him about the State's offer of twenty years at thirty percent. The Petitioner reiterated that he "probably" would have taken the plea agreement if he had known about the Range II classification. He agreed that his "answer would still be equivocal."

The Petitioner initially stated that he could not recall whether he ever discussed his out-of-state convictions with the assistant public defenders but eventually stated that they did not discuss them. However, he acknowledged that he did discuss those convictions with trial counsel.

The District Public Defender testified that on December 7, 2011, she was in the Marshall County Circuit Court with the attorneys from her office. She said that the State made "a 20-year offer." The attorneys discussed the offer with the Petitioner, although "[i]t had been clear for some time that [the Petitioner] was only going to be interested in an offer on an aggravated assault case." They warned the Petitioner that the case would be difficult to try due to the victim's "horrendous injuries." However, the Petitioner refused to plead guilty to attempted first degree murder. The District Public Defender feared that if the Petitioner did not accept the offer, he would be forced to go to trial.

The post-conviction court found "defense counsel [to be] entirely credible in their version of the facts and what the [Petitioner] was told and when he was told it." Additionally, the court accredited counsel's testimony that the Petitioner refused to plead guilty to attempted first degree murder because he did not intend to kill the victim. The court stated that the Petitioner "made the legitimate if unwise decision to go to trial." Accordingly, the post-conviction court found that the Petitioner failed to establish that his counsel were ineffective. The post-conviction court issued a written order denying the petition. On appeal, the Petitioner challenges the post-conviction court's ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded

their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

On appeal, the Petitioner maintains that his counsel were ineffective by failing to inform him that he could be considered a Range II offender if he were convicted at trial. He asserts that this failure influenced his decision to reject the State's offer to allow him to plead guilty to attempted first degree murder with an accompanying Range I twenty-year sentence with release eligibility after service of thirty percent of the sentence. The State responds that the Petitioner's attorneys advised the Petitioner that he was potentially a Range II offender, that he should accept the twenty-year plea offer, and that he faced a potential sentence of forty years as a Range II offender if he were convicted at trial.

- 8 -

The post-conviction court found that the Petitioner's counsel were not ineffective. The post-conviction court accredited the testimony of counsel, finding that the Petitioner was advised that he was potentially a Range II offender. Further, the post-conviction court found that the Petitioner

> was unwilling to accept any offer that the State was actually prepared to make in the case and that this would have been true regardless [of the Petitioner's] beliefs concerning the status of his range. The [Petitioner] was adamant that he did not intend to murder the victim and that he was not going to accept a sentence of more than twelve years. . . . [I]t cannot be said that "but for" the error, the outcome of the case would have been different. The Office of the Public Defender provided information about the danger of the [Petitioner] being found to be Range II, and the [Petitioner] ignored that concern.

The evidence does not preponderate against the findings of the post-conviction court. Petitioner has failed to show that counsel were ineffective.

### III.  Conclusion

Upon review, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE